ROBERTS, Justice
(dissenting).
This is a divorce case making its second appearance in this court. The original decree, entered in January of 1962 by the trial court, granted a divorce to the plaintiff wife and awarded to her the custody of the three minor children of the parties. Child support money of $600.00 per month, alimony of $400.00 per month, and the right to occupy the jointly owned family home of the parties until her remarriage were also awarded to the wife. The decree did, however, require the wife to pay, from the money awarded to her for alimony and child support, the entire cost of the maintenance of the home (valued at over $50,000.00), including the mortgage payments, taxes, insurance and general upkeep. The decree granted a counterclaim filed by the husband, requesting that he be declared to be the owner of a note and mortgage made payable on its face to the parties jointly, and the wife took an appeal from this portion of the decree. Finding that the evidence was insufficient to overcome the presumption of a gift, the District Court of Appeal, Third District, reversed that portion of the decree appealed from See Anderson v. Anderson, Fla.App.1963, 153 So.2d 24.
*907 On petition for Certiorari filed by the husband in this court, a majority concluded that conflict sufficient to confer jurisdiction had not been made to appear, so cer-tiorari was denied. In declining to take jurisdiction, however, it was remarked gratuitously by the majority — or, perhaps, “strongly hinted” or “suggested” would be more accurate — that upon remand the trial court would reconsider the rights of the parties and take into consideration the fact that the wife’s income had been augmented by the value of the one-half interest in the note and mortgage awarded to her by the unreviewable decision. See Anderson v. Anderson, Fla.1964, 164 So.2d 3.
After the going down of the mandate of this court, the husband filed in the trial court a petition for modification of the decree as to alimony and child support. There was already pending there a petition by the wife for an increase in the alimony and child support payments. Both petitions were based on alleged changes in the financial circumstances of the parties. That of the wife relied on the fact that the husband’s 1963 federal income tax return showed an adjusted gross income of $50,-100.00, whereas his 1961 adjusted gross income was only $36,135.00, an increase of approximately $14,000.00. The husband points out that these figures do not accurately reflect his true income after payment of federal and New York State (the situs of real estate from which over one-half of his 1963 income was obtained) income taxes. (While the New York State tax is not stated, it appears from the brief filed on behalf of the wife that the federal income tax for 1963 was $15,025.00, while that of 1961 was only $6,244.00). The husband also claimed to have suffered a decrease in the value of his estate of some $110,000.00 since January of 1962, although the value of the wife’s interest in the Sarasota note and mortgage is the only loss conceded by the wife.
The husband’s petition for modification _ was based on the following facts, which were not disputed: Subsequent to the orig-' inal decree there had been taken from the husband’s estate and added to the wife’s s-total of some $45,000.00 (representing prin--cipal and interest accrued on the Sarasota-note and mortgage from the date of the original decree and to become due in the future, plus an additional sum of $4,000.00 ordered paid to the wife from a bank account). In addition, the jointly owned family home had been sold for $50,000.00, of which some $18,000.00 was payable to the wife, in cash, as her one-half share of the equity of the parties. In view of the fact that the wife had been obligated under the original decree to maintain the home, as noted above, it cannot be conceded that this was an even “swap”, as contended on her behalf, but actually an improvement, also, in her financial condition since the entry of the original decree.
The husband also alleged in his petition for modification, and strongly urged in his argument to the court at both the trial and appellate levels, that the wife was a well educated able-bodied person, well able to obtain lucrative employment to supplement the resources available to her from the large separate estate acquired by her through the largesse of her husband (with some assistance from the appellate court), but that she willfully refused to do so; and that, in these circumstances, the wife had failed to prove a “need” for alimony at the present time, as such “need” has been defined in recent decisions of this court and of the District Courts of Appeal of this state. Pie requested the trial court to delete entirely from the decree the provision for alimony, reserving jurisdiction to reconsider the matter of alimony at a later date should the circumstances of the wife change.
As noted, the petitions of both parties were denied by the trial court. This was done without discussion or findings of fact — merely a statement that the petition of the wife for an increase (and of the husband for a decrease) “in alimony and child support based on an alleged change in the *908 financial circumstances of the parties is denied.” Both parties appealed, and the decree of the trial court in this respect was affirmed. See Anderson v. Anderson, Fla.App.1965, 180 So.2d 360. It is this decision that is now before this court on conflict certiorari.
In its opinion upholding the action of the Chancellor denying both petitions, the appellate court recounted, briefly but in substance, all of the facts and contentions of the parties, as set out above, but made no attempt to distinguish the case sub judice from those relied on by the husband, referred to hereafter. It noted that the trial court “re-examined” the facts existing at the time of the “last hearing” (presumably the hearing upon the basis of which the original award of alimony and child support was made) and then stated only that “[t]he testimony indicated that the wife was still in ‘need’ of alimony and it was stipulated that the husband had the ‘ability’ to pay.” It also noted that the evidence “indicated” an increase of some $14,000.00 in the husband’s estate subsequent to the original decree. Quoting the well settled rule that the “findings” of the Chancellor will not be disturbed on appeal where supported by substantial evidence, the decree was affirmed. This decision is in direct conflict and produces a legal result in direct conflict with the decisions of this court in Raley v. Raley, Fla.1951, SO So.2d 870; Golembeski v. Golembeski, Fla.1952, 57 So.2d 654; and Kahn v. Kahn, Fla.1955, 78 So.2d 367; and of the several District i Courts of Appeal in harmony therewith, see Griffin v. Griffin, Fla.App.1958, 107 So.2d 236; Heller v. Heller, Fla.App.1963, 151 So.2d 35; Beaty v. Beaty, Fla.App.1965, 177 So.2d 54; and Whitehead v. Whitehead, Fla.App.1966, 189 So.2d 397; and cf. Pross v. Pross, Fla.1954, 72 So.2d 671; Schiff v. Schiff, Fla.App.1960, 123 So.2d 295; and Pendleton v. Pendleton, Fla.App.1966, 189 So.2d 499.
These decisions all stand for the proposition that the marriage status, once achieved by the wife, does not carry with it the right forever after to be supported by her former husband in veritable ease and comfort, regardless of her capacities for self support. The horse and buggy era, when the husband’s vow to take care of his wifeo “ ’til death do us part” was accepted by both parties as a sacred promise and an essential part of the marriage contract — required, as well, by the mores of the society of that era and the necessity of insuring that the divorced wife could not become a public charge — is a thing of the past. Today, the high incidence of divorce in our country, is, regrettably, a reality of life which we no longer approach in the manner of the camel threatened by an oncoming sand storm. We now educate our daughters, as well as our sons, to enable them to take their place in the business community — not only before and during marriage but also after the break-up of the marriage, should it occur. And we are coming more and more to recognize that in most cases the break-up of the marriage is not, as it cannot be, solely the fault of the party who is found to be technically at fault — that both parties must bear some of the brunt of the failure. It should not be considered a victory for one spouse and a reverse for the other, but a defeat for both.
It is therefore the settled law of this jurisdiction that the fact that the divorced wife is able to be employed and has the ability to earn a living is a relevant material factor in determining her “need” for alimony, regardless of whether she was or was not a wage earner during the marriage or at the time of the divorce. It is well settled, and has for a long time been so, that the fact the wife has a separate estate — whether acquired before or during marriage, from her own efforts or those of her husband — is a relevant material factor in determining her “need” for alimony. Chaires v. Chaires, 1864, 10 Fla. 308, 315; 10 Fla.Jur., Divorce and Annulment, Sec. 166; Heller v. Heller, supra, 151 So.2d 35; Kahn v. Kahn, supra, 78 So.2d 367. The fact that there were minor *909 children involved in the case mb judice (aged IS, 13 and 8 at the time of the hearing on the petitions for modification in October of 1964, all in good health and attending local schools) is relevant to the question of whether the wife should be required to seek part-time, as distinguished from full-time, employment, but does not relieve her of her responsibility to contribute to her own support, if she has wage-earning capacity. See Raley v. Raley, supra, 50 So.2d 870.
In short, the Chancellor, in determining the question of what alimony, if any, should be awarded to the wife in a divorce proceeding, can no longer settle the question solely on a consideration of her actual monetary “need” and the husband’s financial “ability” to pay; her monetary “need” must be met, in the first instance, by her own resources — her wage-earning capacity as well as her separate estate — and only then, if they are not adequate, may the husband be called upon to provide her with such additional funds “as from the circumstances of the parties and nature of the case may be fit, equitable and just; * * Sec. 65.08, Fla.Stat., F.S.A.
It seems quite clear, from the facts of the case as recounted above, that the trial court’s denial of the husband’s petition for modification, and the appellate court’s af-firmance thereof, must have been predicated upon a misconception of the law governing the award of alimony as pronounced in the cited cases. Accordingly, the decision of the appellate court here reviewed should be quashed insofar as it affirms the denial of the husband’s petition for modification, and I must therefore dissent from the decision denying relief to the Petitioner.
ERVIN, J., concurs.