HERSEY, Chief Judge.
August Urbanek, former husband, appeals certain aspects of the final judgment dissolving his marriage to Marilyn Urbanek and various post-judgment orders.
Two weeks prior to the marriage of the parties in 1979 they entered into an ante-nuptial agreement, which is the focus of the principal issues on appeal. At the time of the marriage the husband was a fifty-nine-year-old self-made real estate developer and investor with a net worth of approximately $25,000,000, which had increased to $30,000,000 at the time of final hearing. The wife was a twenty-five-year-old aspiring singer and actress with a net worth of $36,000. In October 1982 the parties adopted a child born in March of that year. In May of 1983 the husband moved out of the marital home and petitioned for dissolution.
At the final hearing evidence was introduced, which was to some extent disputed, that the wife had been diagnosed as having multiple sclerosis and that, in order to provide for her medical care and other necessities during her twenty-year life expectancy, an award having a present money cost of $474,517 would be required.
The antenuptial agreement provided that, in the event of dissolution of the marriage, a lump sum payment would be made to wife, the amount of which would depend upon the length of the marriage. The four-year term of the marriage entitled the wife to a lump sum payment of $250,000.
In the final judgment the trial court found “that the Wife in fact did freely and voluntarily execute the Antenuptial Agreement and that she well understood that such agreement could be enforceable against her by the Husband.” Neither party contests this finding. The judge then “approved, confirmed, ratified and incorporated in this Judgment by reference” the antenuptial agreement and ordered the parties to comply with it, subject, however, to certain exceptions. One of those exceptions was a modification of the agreement to provide for an additional lump sum payment to the wife because:
The now diagnosed multiple sclerotic condition of the Wife constitutes a change in circumstances which warrants a modification of the Antenuptial Agreement to the extent that provision shall be made for the Husband to supply sufficient funds for the medical and attendant care and treatment of the Wife reasonably necessary in the treatment of her illness. The Life Care Plan prepared by Rehabilitation Counsel Paul Deutsch, assuming the Wife having a 20-year life expectancy, has a present money value cost of $474,517. The Court determines that the plan and its cost are reasonable. In view of the age and medical history of the Husband as compared to that of the Wife, it is probable that the Wife will outlive the Husband and to ensure that the Wife will receive the necessary medical attention, it is determined that a lump sum payment of $474,517 shall be made by the Husband to the Wife. Said payment shall be in addition to any lump sum payment provided for in the Ante-nuptial Agreement.
*599 The parties’ agreement, which was found valid and enforceable by the trial court, provides for a lump sum award to the wife in a specified amount. The husband contends, on appeal, that the trial court could not increase this award whether on the basis of changed circumstances or for any other reason because the entitlement to such a lump sum payment is a vested right which is not subject to modification. The wife takes the position that Florida law permits modification of any payments to which the parties have agreed, including lump sum, so long as there has been a change in circumstances.
As an aside, we suggest that an increase in the amount awarded wife does not actually modify (in the sense of divesting her of) her entitlement; it simply constitutes an addition to her entitlement. The controverted issue is whether the “obligation to pay” only a fixed, lump sum award is subject to modification by requiring the payment of additional amounts. The cases do not make this distinction clear. We assume, however, in relying on or distinguishing these cases, that reference to “entitlement” necessarily includes its reciprocal, the “obligation to pay.” One further aspect that deserves at least passing reference is that we do NOT deem it a legally significant circumstance whether the “modification” is attempted prior to, at the time of, or subsequent to approval of the agreement by the trial court and its incorporation into the final judgment.
Section 61.14(1), Florida Statutes, provides:
Modification of support, maintenance, or alimony agreements or judgments.
(1) When the parties have entered into, or hereafter enter into, an agreement for payments for, or instead of, support, maintenance, or alimony, whether in connection with a proceeding for dissolution or separate maintenance or with any voluntary property settlement, or when a party is required by court order to make any payments, and the circumstances or the financial ability of either party has changed or when the child or children who are beneficiaries of an agreement or court order as described herein have reached the age of 18 years since the execution of such agreement or the rendition of the order, either party may apply to the circuit court of the circuit in which the parties, or either of them, resided at the date of the execution of the agreement or reside at the date of the application, or in which the agreement was executed or in which the order was rendered, for a judgment decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child or children, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the agreement or order.
The trial court relied on this provision to “modify” the antenuptial agreement, in effect holding that the statute authorizes modification of lump sum alimony. The cases uniformly hold to the contrary. The rule that emerges from consideration of this issue is that a provision for a lump sum payment, whether by agreement of the parties or by court order, is not subject to modification pursuant to section 61.14. Zimmer v. Zimmer, 328 So.2d 525 (Fla. 4th DCA 1976). See also Philipose v. Philipose, 431 So.2d 698 (Fla. 2d DCA 1983) (Since lump sum alimony involves payment of a fixed amount, it is a vested right and, as such, is not subject to modification, even under section 61.14, Florida Statutes). As this court explained in Benson v. Benson, 369 So.2d 99 (Fla. 4th DCA 1979):
We agree with the language of Sedell v. Sedell, 100 So.2d 639, 642 (Fla. 1st DCA 1958),
Provisions a [sic] of a separation agreement constituting a final settlement of the rights which each party has in property accumulated during their marriage are to be construed in the same manner as any other con *600 tract. Rights in property which have become fixed and vested under the provisions of such agreement should not be disturbed by the courts, except upon proof which would justify modification or cancellation of a contract between strangers. Each of the parties is justified in relying upon the property settlement provisions of a separation agreement in planning the future course of their respective lives. Rights acquired under such agreements cannot be destroyed nor withdrawn by the courts upon the mere representation of either party that further compliance with the contract would prove burdensome or inconvenient. This is particularly true when the agreement has been ratified and confirmed by the court and incorporated in a final decree of divorce. (emphasis supplied)
369 So.2d at 100-101 (footnote omitted).
Appellee seeks to have this court recognize a distinction between a provision for a lump sum payment in an agreement and such a provision contained in a court order for purposes of determining whether the provision is modifiable. However, neither the statute nor the cases make such a distinction. The only significant distinction made in the cases is between lump sum payments (not modifiable) and periodic payments (modifiable), and the cases cited by appellee involve the latter. Although in Benson this court noted that it is “particularly true” that the rights set forth in the parties’ agreement could not be modified where the agreement had been approved by a court, such approval was not made a requirement in order for the agreement to be enforceable. In any event, the court here did, in fact, approve the parties’ ante-nuptial agreement and incorporated it into the final judgment, but then improperly proceeded to modify it by awarding the wife additional sums.
There is another reason for holding that modification was impermissible on these facts. The antenuptial agreement provides in the “Whereas” section that “each of the parties has agreed to accept the provisions of this Antenuptial Agreement in lieu of and in full discharge, settlement and satisfaction of all the rights and claims that would accrue to each of them in the estate and property of the other by reason of the marriage” and further, that the wife “feels that the provisions for her both for alimony and support ... are fair and reasonable.” In Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA), rev. denied, 392 So.2d 1381 (Fla.1980), the husband sought modification of the alimony provision in the parties’ property settlement agreement. The agreement also provided that the parties waived any right to have the payments modified. This court recognized that “a change in the circumstances of either party may require modification of alimony,” but also noted that “[a]s a general rule, any right may be waived....” Id. at 702-703. The court then considered “whether the public policy of the State of Florida prohibits one from waiving the statutory right to seek modification of alimony payments',” and concluded:
Such a policy, if it exists, would necessarily be based upon the right of society not to be burdened with the support of an individual for whom the statute would, in the absence of a waiver of its benefits, furnish a method for obtaining support. If this were the public policy of Florida, then we would expect to uniformly find that a right to alimony may never be waived. However, the law is to the con- . trary.
Id. at 703. The rule that “[a] party, by agreement, may waive all right to alimony” was also recognized by the fifth district in Ivanhoe v. Ivanhoe, 397 So.2d 410, 411 (Fla. 5th DCA 1981), where the court held that the provisions of an antenuptial agreement for $10,000 to be paid to the wife as full settlement of all rights, including alimony, constituted a waiver of the wife’s right to any additional payments.
The same situation is involved in the instant case, where the agreement provides that the wife will accept $250,000 in lieu of all property and support rights. The *601 agreement having been held valid and enforceable, it constitutes a waiver of the wife’s right to a modification of the designated amount.
A second issue on appeal is the propriety of an order entered post-judgment concerning attorney’s fees. The antenup-tial agreement recognized the wife’s right to temporary support and attorney’s fees during the pendency of a dissolution proceeding. As to any such payments, however, the agreement provided that the wife
agrees that any payments so made to her by [husband] and directed by a court of competent jurisdiction to be payments for temporary alimony, temporary maintenance, temporary support (exclusive of temporary child support) or temporary attorneys’ fees shall be deemed to be an offset against those sums to be paid by [husband] to [wife] under the terms of paragraph VIII hereof and [wife] further agrees that [husband] shall be given a credit for said payments against any obligations [husband] may have to [wife] under the terms of this paragraph VIII.
The trial court determined, post final judgment, that this provision was unenforceable. The husband was directed to make payment of the $250,000 “without offsets for the former husband’s payments for the former wife’s attorneys’ fees and temporary alimony.” (emphasis added.)
We conclude that the trial court correctly decided this issue. A rule that permitted the husband to offset temporary support and attorney’s fees against an agreed-upon lump sum could well place the wife in the untenable position of being required either to forego representation by an attorney in the proceedings or to diminish or totally eliminate her lump sum entitlement. Such a rule would clearly fly in the face of public policy. We therefore conclude that the trial court’s order was not improper because the provision in the antenuptial agreement was void ab initio, and thus, the trial court’s order recognizing the provision to be invalid did not constitute a modification. The wife has a vested right to the $250,000 lump sum payment. To then allow a setoff for her attorney’s fees would effectively allow the husband to contract away his responsibility for his wife’s prejudgment attorney’s fees, which he may not do. Belcher v. Belcher, 271 So.2d 7 (Fla.1972). As noted in Belcher, the husband’s obligation for his wife’s attorney’s fees is part of his support obligation, and “ante or post-nuptial contracts are entered into subject to then existing law, including the law of this state that makes a husband responsible for the support of his wife while she is married to him.” Id. at 9. The offset provision in the Urbaneks’ agreement was thus illegal and void.
Next, the husband complains of error in an award of attorney’s fees to the wife in the amount of $110,000 in August 1984. He contends that the attorney’s fee award should be redetermined because it improperly included amounts for:
(1) frivolous issues — specifically the “speculative future damages” for the wife’s multiple sclerosis.
(2) representation of the wife by multiple law firms.
(3) post-judgment matters.
It appears that the wife in good faith alleged changed circumstances due to the diagnosis of multiple sclerosis during the marriage. There was evidence supporting a finding that she did in fact have the disease, and that it was not a matter known to the parties or contemplated when the antenuptial agreement was executed. The law is that where the wife has agreed to a lump sum payment, the amount may not be modified because of changed circumstances. However, that does not prevent the wife from asserting, as she did here, that the rule should apply only to court orders, not agreements of the parties, or that such should not be the rule. We therefore conclude that the wife’s challenge to the antenuptial agreement was not frivolous. (We also note that she convinced the trial judge to modify the agreement.)
*602 The husband contends further that the trial court erred in the amount of fees awarded where the wife was represented by multiple law firms. The record discloses, however, that the multiple representation was specifically taken into consideration by the trial court and that the fees were reduced from the requested $151,000 to $110,000 because of it. The amounts of fees in prior orders were also substantially reduced for this reason. The trial judge noted in his order that:
Three attorneys [for the wife] were present during the trial of this matter, and likewise were present during many other proceedings. Admittedly, the Former Husband would scarcely notice the difference in his bank account if the Court were to award the entire fees requested. However, it is the opinion of this Court that such would not represent a just determination in this cause. One of the Former Wife’s experts testifying on attorney’s fees acknowledged that three attorneys were usually excessive in representation of dissolution matters. With this the Court is in total agreement. It was the prerogative of the Former Wife to choose her attorney or attorneys to represent her, but it is the responsibility of this Court in awarding a fee for such representation that such amount be reasonable_ [I]t is the Court’s determination that there was a great overlapping of time by the presence of two or more attorneys through this litigation and thus a reduced award.
Finally, the husband argues that no attorney’s fees could be awarded the wife for matters on which her attorneys spent time after the final judgment was entered. We agree with this contention. The wife agreed that she would not be entitled to attorney’s fees and costs, with the exception of “temporary attorney’s fees,” but, as we have previously noted, it has been held that, regardless of the terms of any agreement, the husband is liable for the wife’s attorney’s fees incurred prior to entry of the final judgment dissolving the marriage as part of his support obligation. However, once the marriage is dissolved, the husband’s support obligation ends and, thus, his obligation for attorney’s fees also ends. Belcher v. Belcher, 271 So.2d 7 (Fla.1972); Mulhern v. Mulhern, 446 So.2d 1124 (Fla. 4th DCA), rev. denied, 455 So.2d 1033 (Fla.1984); Belcher v. Belcher, 307 So.2d 918 (Fla. 3d DCA), cert. denied, 317 So.2d 762 (Fla.1975). We find, however, that this issue was not properly preserved for appellate review since it was not raised below. See Hartley v. Florida East Coast Railway, 339 So.2d 630 (Fla.1976). The husband never contested in the trial court his liability for post-judgment fees. We therefore conclude that reversible error has not been demonstrated.
The husband also contests costs awarded in connection with the testimony of the wife’s experts regarding the care she would need due to her multiple sclerosis and the costs of that care. The husband contends these costs are improper because they were associated with speculative future damages.
As we have previously noted, the same argument was advanced and rejected in connection with attorney’s fees. Because the matters were not speculative and the wife’s raising of the issue was not frivolous, there was no error in awarding these costs.
Finally, in January 1985 the trial judge awarded the wife $20,000 in attorney’s fees and $137.50 in costs. The husband contends that these were fees and costs pending appeal and, under the circumstances, the trial judge could not properly award attorney’s fees and costs to the wife for post-judgment matters. However, no transcript of the hearing is included in the record on appeal; therefore, there is no record support for the assertion that this point was properly preserved for review, and we decline to consider it on appeal.
We therefore reverse and remand to the trial court with directions to strike from the final judgment the award of an additional lump sum payment of $474,517. We affirm the order “modifying” the final judgment to prevent a setoff for prejudg *603 ment attorney’s fees as well as the additional orders awarding attorney’s fees and costs.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
HURLEY and DELL, JJ., concur.