817 So.2d 1004 (2002)
Luz Mary Soto BALAZS, Appellant,
v.
Zoltan BALAZS, Appellee.
No. 4D01-3452.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
Steven Warm of Warm & Hixson, Boca Raton, for appellant.
Karen A. Gagliano of Karen Gagliano, P.A., Boca Raton, for appellee.
PER CURIAM.
We affirm on all issues except for attorney's fees. Upon the concession of husband's counsel we reverse the denial of fees under section 61.16 and remand this case to the trial court for further proceedings under Appelbaum v. Appelbaum, 620 So.2d 1293 (Fla. 4th DCA 1993).
GUNTHER, STONE and FARMER, JJ., concur.
FARMER, J., concurring specially.
The trial judge found that the wife had freely and voluntarily entered into a prenuptial agreement in which she renounced any interest in her husband's property, agreed to waive alimony in the event of divorce, and agreed to be responsible for her own attorney's fees in any divorce action. We have today upheld the trial court's holdingexcept for the attorney's fees.
In Casto v. Casto, 508 So.2d 330 (Fla. 1987), the court held that "[i]f [a prenuptial] agreement that is unreasonable is freely entered into, it is enforceable."[1]Casto was a landmark case that "clarified" the legal landscape on nuptial agreements. Casto established the quaint notion that contracting parties to marital agreements will be held to their bargainseven if the bargain is a harsh oneso long as the agreement is free and voluntary and not tainted by fraud or overreaching. Under Casto, a marital partner may freely and voluntarily give up any claim to the other's money or property, which presumably includes money for attorney's fees.
Long before Casto was decided, however, the court had held in Belcher v. Belcher, 271 So.2d 7 (Fla.1972), that a husband cannot under an express provision in an antenuptial agreement contract away a future obligation to pay attorney's fees, as well as alimony and suit money, during a separation prior to dissolution of marriage. It should need no citation of authority to recognize that the holding in respect to the inability to contract away the right to attorney's fees before dissolution of marriage in Belcher represents our legal past and is a product of a time when attitudes *1005 about marriage and divorce were vastly different than they are now. Belcher is thus surely part of the legal landscape "clarified" away by Casto.
While Belcher reigned in this state, we had decided in the pre-Casto decision in Mulhern v. Mulhern, 446 So.2d 1124 (Fla. 4th DCA 1984), that a nuptial provision waiving attorney's fees in a divorce action is not enforceable, expressly relying on Belcher. One would have to think that Casto effectively made both Belcher and Mulhern invalid as to the unenforceability of these kinds of nuptial agreements. Nevertheless, in the post-Casto case of Appelbaum v. Appelbaum, 620 So.2d 1293 (Fla. 4th DCA 1993), we followed both Belcher and Mulhern and refused to enforce a valid nuptial agreement waiving any claim to attorney's fees in a divorce action. Counsel for the party who sought enforcement of the nuptial agreement in this case has conceded that Appelbaum still controls in this district. Therefore I agree that we should not confront the question of Appelbaum's continuing validity in this case.
When the issue is properly raised, however, I think it will be necessary to recede from that part of Appelbaum holding that the section 61.16 factors should be considered even when a valid nuptial agreement has waived such fees. If a party freely and voluntarily decides to waive all attorney's fees in a dissolution of marriage action, I know of no reason why he or she should not be held to the bargain made. After all, Casto does not shrink from holding parties to their bargains waiving property rights and alimony. The purpose of the attorney's fee statute in chapter 61 is to enable a party to contest unresolved issues of property rights and alimony. Hence if one can waive rights to property and alimony, surely one can equally waive rights to attorney's fees. I see nothing unique about attorney's fees suggesting a need for a different rule. Prenuptial agreements exist primarily to avoid litigation in the event of divorce. We should not make it easier to undermine the essential purpose of a valid prenuptial agreement by funding the very litigation the parties strove thereby to avoid.
NOTES
[1] As Casto itself recognized both prenuptial and postnuptial agreements are governed by the same rules. 508 So.2d at 333. I shall therefore refer to both kinds as "nuptial" agreements.