911 So.2d 1154 (2005)
Hadi B. LASHKAJANI, Appellant,
v.
Amy H. LASHKAJANI, Appellee.
No. SC03-1275.
Supreme Court of Florida.
June 30, 2005.
Rehearing Denied September 13, 2005.
*1155 Robert L. Trohn and Callie N. Sandman of Gray, Harris, Robinson, Lane and Trohn, Lakeland, FL, for Petitioner.
Raymond J. Rafool, II, of Rafool and Rafool, P.A., Winter Haven, FL, for Respondent.
CANTERO, J.
In this case, we consider the enforceability of a prevailing party attorney's fees provision in a prenuptial agreement. The Second District Court of Appeal certified the following question of great public importance: "May the parties, by express provision in a prenuptial agreement, contract away a future obligation to pay attorney's fees and costs during the term of the marriage by providing for prevailing party attorney's fees in actions seeking to enforce or prevent the breach of the prenuptial agreement?" Lashkajani v. Lashkajani, 855 So.2d 87, 90 (Fla. 2d DCA 2003). We have discretionary jurisdiction and granted review. Lashkajani v. Lashkajani, 879 So.2d 622 (Fla.2004) (order granting review); see art. V, § 3(b)(4), Fla. Const. For the reasons explained below, we answer the certified question in the affirmative.

I. FACTS
In 1989, after three months of negotiations (assisted by separate counsel), the Lashkajanis executed a prenuptial agreement. They were married shortly thereafter. Their marriage lasted about ten years and produced three children. In 2000, however, the wife filed for divorce. She argued that the agreement was unfair to her and that she was coerced into signing it. The circuit court found the husband's "financial disclosure to be full and frank," and the agreement "fair and [not] grossly disproportionate to the detriment of the Wife." The court concluded the agreement was valid and enforceable.
Both parties sought attorney's fees. The husband based his claim on the prevailing party attorney's fees provision in paragraph 16 of the agreement.[1] The wife based hers on section 61.16, Florida Statutes (2001). The circuit court awarded fees to both parties. The court found that the husband had at least $12 million, and the wife over $1 million, in net worth, although the litigation had depleted some of those funds. Based on the agreement's attorney's fees provisions, the court awarded the husband "the reasonable attorney's fees and costs involved in his defense of *1156 the parties' prenuptial agreement," which it calculated at $63,022.92. The court also granted the wife's attorney's fees and costs under section 61.16, finding that her "pursuit of efforts to set aside the prenuptial agreement were taken in good faith and with a colorable legal and factual basis," and were therefore not frivolous. Considering the relative financial inequality of the parties, the court awarded the wife $117,022.42 in attorney's fees.
The wife appealed the award of fees to the husband. See Lashkajani, 855 So.2d at 89. She claimed that paragraph 16 of the agreement contracted away pre-dissolution spousal support obligations, contrary to our decision in Belcher v. Belcher, 271 So.2d 7 (Fla.1972). The Second District agreed, holding paragraph 16 unenforceable because it "purported to waive the Former Husband's obligation to pay attorney's fees and costs incurred during the marriage." Lashkajani, 855 So.2d at 89. The court held that "[i]t is well settled in Florida that a spouse's obligation to provide spousal support during the marriage, including the responsibility for attorney's fees and costs, may not be contracted away by a prenuptial agreement." Id. (citing Belcher). The court reversed the award of attorney's fees and costs to the husband. The court noted, however, that "perceptions have changed since Belcher was decided that may require a review of existing legal principles" (quoting Fernandez v. Fernandez, 710 So.2d 223, 225 (Fla. 2d DCA 1998)), and certified the question quoted above.

II. ANALYSIS
The narrow issue before us, as the district court asked it, is whether a prenuptial agreement may contract away a future obligation to pay attorney's fees and costs during the marriage by providing for prevailing party attorney's fees in actions seeking to enforce the agreement. As explained below, we hold that it may.

A. Florida Cases on Nuptial Agreements
Until about 1970, Florida law limited the ability of married couples to execute contracts defining their respective rights upon dissolution of the marriage. The majority rule was that "agreements to facilitate or promote divorce are illegal as contrary to public policy." Allen v. Allen, 111 Fla. 733, 150 So. 237, 238 (1933); see Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371, 372 (1927); see also Posner v. Posner, 233 So.2d 381, 382 (Fla.1970) ("Posner I") (citing Allen and Gallemore as the long-held majority rule at the time); Developments in the Law-The Law of Marriage and Family: Marriage as Contract and Marriage as Partnership: The Future of Antenuptial Agreement Law, 116 Harv. L.Rev. 2075, 2078 (2003) (noting that nuptial agreements were traditionally invalid and citing Florida and California as early jurisdictions recognizing their validity).
In 1970, however, the law began to cautiously evolve towards enforcement of these agreements. In Posner I, we held that antenuptial agreements "should no longer be held to be void ab initio" on public policy grounds. 233 So.2d at 385. We based our decision on the changing societal views towards marriage: "With divorce such a commonplace fact of life, it is fair to assume that many prospective marriage partners ... might want to consider and discuss ...and agree upon, if possiblethe disposition of their property and the alimony rights of the wife in the event their marriage, despite their best efforts, should fail." Id. at 384. Therefore, we allowed couples contractually to limit post-dissolution alimony payments. In the follow-up case of Posner v. Posner, 257 So.2d 530 (Fla.1972) ("Posner II"), however, we limited this freedom by allowing a *1157 court to modify the agreement. Id. at 535; see also Belcher, 271 So.2d at 13 (noting that "Posner I holds, upon the satisfaction of certain conditions, that antenuptial agreements limiting alimony to a certain amount are enforceable (and subject to modification as held in Posner II)").
Shortly after Posner II, we considered in Belcher "whether or not by express provision in an antenuptial agreement the husband can, by the payment of a present, fixed consideration, contract away his future obligation to pay alimony, suit money and attorney's fees during a separation prior to dissolution of the marriage." 271 So.2d at 8. We held that "[u]ntil there is a decree of dissolution of the marriage, thus ending her role as wife, the wife's support remains within long-established guidelines of support by the husband which cannot be conclusively supplanted by his advance summary disposition by agreement." Id. at 11. Given the husband's long-established obligation of spousal support "under the historical line of cases since shortly after Florida became a state in 1845," id. at 9, tradition and the perceived need to protect women led the Court to conclude that pre-judgment support obligations cannot be waived.[2]
Finally, in Casto v. Casto, 508 So.2d 330 (Fla.1987), we confirmed that even unreasonable nuptial agreements regarding post-dissolution property and support, if freely executed, are enforceable. Id. at 334. In that case, we explained the circumstances that would justify invalidating a nuptial agreement. We stated that there were two ways an otherwise enforceable nuptial agreement may be held invalid. Id. at 333. First, the agreement may be set aside or modified by a court if it was "reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching." Id. Second, if the agreement is "unfair or unreasonable ... given the circumstances of the parties," and the trial court finds the agreement "disproportionate to the means of the defending spouse," then the rebuttable presumption is that "there was either concealment by the defending spouse or a... lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached." Id. Further, incompetence of counsel is not a ground to set aside a valid nuptial agreement. Id. at 334.
As the cited cases demonstrate, the evolution in Florida law approving prenuptial agreements concerning post-dissolution support has so far not extended to provisions waiving the right to recover pre-judgment support such as temporary alimony. In fact, in the more than thirty years since Belcher, Florida courts consistently have rejected attempts to waive prejudgment support. See Fernandez v. Fernandez, 710 So.2d 223, 225 (Fla. 2d DCA 1998) (noting that "Belcher still requires one spouse, who has the ability, to support the other more needy spouse until a final judgment of dissolution is entered even in the face of an antenuptial agreement to the contrary"); Appelbaum v. Appelbaum, 620 So.2d 1293 (Fla. 4th DCA 1993) (holding that a waiver cannot be conclusive for the period before dissolution); Lawhon v. Lawhon, 583 So.2d 776, 777 (Fla. 2d DCA 1991) (noting that a husband's duty of *1158 spousal support during the marriage cannot be "waived or contracted away in an antenuptial agreement"); Urbanek v. Urbanek, 484 So.2d 597, 601 (Fla. 4th DCA 1986) (holding that allowing a husband to offset attorney's fees from a lump sum award would "allow the husband to contract away his responsibility for his wife's prejudgment attorney's fees, which he may not do").
The evolution in our law, therefore, has been toward greater freedom of contract regarding post-dissolution spousal support, while recognizing the continuing obligations of support before the marriage is dissolved. The issue in this case falls in the interstices between these two principles. That is, we consider not a provision concerning spousal support, but one providing for prevailing party attorney's fees in litigation surrounding the enforcement of the prenuptial agreement itself. We now discuss that issue.

B. Prevailing Party Provisions in a Valid Prenuptial Agreement
We reiterate that the issue as presented in the certified question is narrow, and we decide it as such. Specifically, we need not, and do not, decide today whether provisions in a prenuptial agreement concerning pre-dissolution support may be enforced. We decide only whether prevailing party attorney's fees provisions in such agreements, concerning litigation over the validity of the agreements themselves, are enforceable. We hold that they are. Because prenuptial agreements regarding post-dissolution support are enforced "as a matter of contract," and prevailing party clauses have long been enforceable in ordinary contracts, we find no reason not to enforce them here. Moreover, while these clauses technically involve an expense incurred during marriage, they are more closely related to enforcing the prenuptial agreement, which distributes assets after marriage, than they are to ensuring that each spouse supports the other during the marriage.
Valid prenuptial agreements regarding post-dissolution support are contracts. While we still recognize "a vast difference between a contract made in the market place and one relating to the institution of marriage," Posner I, 233 So.2d at 382, we enforce valid prenuptial agreements regarding post-dissolution support "as a matter of contract." Belcher, 271 So.2d at 10. The difference is in the standard we use to determine the contract's validity. When deciding whether to enforce a prenuptial agreement, trial courts must "carefully examine the circumstances" surrounding the agreement because parties to a prenuptial agreement are not "dealing at arm's length." Casto, 508 So.2d at 334.
Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced. See Price v. Tyler, 890 So.2d 246, 250 (Fla.2004) (explaining that the only way to recover attorney's fees and costs is if a statute authorizes it or the contract so provides). Trial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith. See Brickell Bay Club Condo. Ass'n, Inc. v. Forte, 397 So.2d 959, 960 (Fla. 3rd DCA), review denied, 408 So.2d 1092 (Fla.1981). Such provisions exist to "protect and indemnify" the interests of the parties, not to enrich the prevailing party. See Blount Bros. Realty Co. v. Eilenberger, 98 Fla. 775, 124 So. 41, 41 (1929) (upholding a clause to pay attorney's fees because "a contract to pay attorney's fees is one, not to enrich the holder of the note, but to protect and indemnify him against expenditures necessarily made or incurred to protect his interests"); see also Dunn v. *1159 Sentry Ins. Co., 462 So.2d 107 (Fla. 5th DCA 1985) ("A contractual provision that the losing party will pay the prevailing party's attorney's fees is an agreement for indemnification....").
Prevailing party clauses in prenuptial agreements can be distinguished from provisions regarding pre-dissolution support. Provisions waiving the right to temporary alimony or attorney's fees and costs incurred in the dissolution proceedings are included to enrich the parties entering the agreement. In contrast, prevailing party clauses protect the agreement itself. Their purpose is to indemnify the party who relied on the agreement and constitute a disincentive to one who may frivolously challenge it.
Furthermore, prevailing party clauses hardly implicate the state's interest in ensuring that each spouse supports the other during the marriage. Belcher articulated two reasons for prohibiting spouses from contracting out of their duty of support. 271 So.2d at 9, 10. First, the state remains an "interested party" in the contract until the marriage is dissolved. Id. at 9. Because prenuptial agreements have been enforced only to the extent they address post-dissolution property and support arrangements, they take effect when the state is no longer an interested party. Therefore, the state is not an interested party in clauses to protect and enforce the agreement. Second, the state's interest in prenuptial agreements is limited to ensuring that each spouse "is adequately cared for by [his or] her own income and assets" during the dissolution proceeding. Id. at 10. If one spouse lacks support, and the other is able to provide it, the court must be able to intervene in equity. Id. Prevailing party clauses implicate neither of these concerns. They do not address either spouse's need for support. They merely solidify the party's agreement by providing a disincentive to spouses who may frivolously challenge it.[3]
We repeat what we held in Casto: "Courts ... must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of ... [nuptial] agreements." 508 So.2d at 334. The courts of this state play an important role in the smooth and equitable administration of dissolution proceedings. Our holding today does not undermine this important role, nor does it affect our holdings in Casto and other cases that courts may scrutinize nuptial agreements to ascertain that the parties acted without compulsion and based on full disclosure. Although contract principles play a role in dissolution proceedings, courts must remember that
proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law. See § 61.011, Fla. Stat. (1995) ("Proceedings under this chapter are in chancery."). The legislature has given trial judges wide leeway to work equity in chapter 61 proceedings. See, e.g., § 61.001, Fla.Stat. (1995).
*1160 Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997). Therefore, we limit our holding in this case to answering the certified question in the affirmative. Subject to the limitations explained in Casto, prenuptial agreements providing for prevailing party attorney's fees in actions seeking to enforce or prevent the breach of a nuptial agreement are enforceable.

III. CONCLUSION
For the reasons stated above, we hold that prenuptial agreement provisions awarding attorney's fees and costs to the prevailing party in litigation regarding the validity and enforceability of a prenuptial agreement are enforceable. We answer the certified question in the affirmative and quash the district court's decision.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] Two paragraphs of the agreement provide for attorney's fees and costs. This opinion addresses only the enforceability of paragraph 16. Paragraph 8(A)(2) addresses attorney's fees and costs incurred in the dissolution proceedings, which is beyond the scope of this opinion.

Paragraph 8(A)(2) reads:
Costs and Attorney's Fees. If a complaint or petition for divorce or dissolution of marriage or separation or other proceeding is filed by either party, the party so filing agrees to pay the cost of filing such action and each party shall be responsible for the payment of all his or her own attorney's fees and other costs incurred in connection with such action or proceeding, or in contesting the termination of such marriage.
Paragraph 16 reads:
ATTORNEY'S FEES AND COSTS. Should any party retain counsel for the purpose of enforcing or preventing the breach of any provision of this Agreement, including, but not limited to, by instituting any action or proceeding to enforce any provision hereof, for damages by reason of any alleged breach of any provision, for a declaration of such party's rights or obligations or any other judicial remedy, then the prevailing party shall be entitled to reimbursement from the losing party for all reasonable costs and expenses incurred, including, but not limited to reasonable attorney's fees and costs for the services rendered to the prevailing party.
[2] Belcher spoke of the marital support obligation in terms of a husband's duty to support his wife because that was how Florida law described this obligation at the time Belcher was decided. 271 So.2d at 8-9. The statute has since been revised to require either spouse to support the other, see ch. 71-241, ch. 95-147, Laws of Fla; see also § 61.09, Fla. Stat. (2004), and the courts have long interpreted the statute in a gender-neutral way. See Werk v. Werk, 416 So.2d 483 (Fla. 4th DCA 1982) (requiring a wife to pay temporary alimony to her husband).
[3] While enforcing such an agreement may also be a disincentive to the spouse who validly challenges it, this risk seems minimal. First, Casto provides a clear standard whereby parties can predict whether they will prevail in litigation involving the validity or enforcement of a prenuptial agreement. 508 So.2d at 333. A party knows whether it entered the agreement with full knowledge of the other's assets and income, and can generally discern whether the circumstances surrounding the agreement constitute fraud, misrepresentation, etc. Second, it is not unjust to place this risk on the challenging party when she or he voluntarily entered this agreement knowing the clause was included.