WELLS, Chief Judge.
Former wife, Shoshana Schecter, appeals from a non-final order terminating her former husband Leroy Schecter’s previously agreed to and court ratified temporary alimony and attorney’s fees obligations. We find no abuse of discretion in the trial court’s decision to terminate the payment of Mrs. Schecter’s temporary alimony but do find the order terminating the payment of her temporary fees to be without support.
In July 2002, after an eighteen year romantic relationship, the parties executed a prenuptial agreement in which the now former husband, Leroy Schecter, (then with a disclosed net worth approaching $160 million) and the now former wife, Shoshana Candiotti, (then with a worth of almost $1 million) agreed that in the event their contemplated marriage ended in a divorce, Shoshana would receive only $260,000 from Mr. Schecter.
In February 2010, Mr. Schecter filed for a divorce and sought to enforce the prenuptial agreement. Mrs. Schecter sought to set it aside. During the course of the proceedings, the parties entered into two agreements to provide for temporary support and attorney’s fees for Mrs. Schecter. Both agreements, or stipulations, were spread on the record in the form of agreed orders. The first agreement, entered on July 29, 2010, was embodied in an order titled “Agreed Order on Wife’s Motion for Temporary Relief and Husband’s Motion for Exclusive Use of Marital Home,” and (1) required Mr. Schecter to pay certain amounts to Mrs. Schecter; (2) granted Mrs. Schecter exclusive possession of the parties’ Indian Creek Village home (along with some funds to defray the costs thereof); and (3) obligated Mr. Schecter to pay Mrs. Schecter’s attorney’s fees and costs during the pending litigation:
1. As and for temporary spousal support for the Wife, the parties have agreed to the following:
a)The Husband shall ensure that the Wife shall continue to have use of her Visa card, with a Ten Thousand ($10,-000.00) Dollar per month limit ...;
b) The Husband shall pay to the Wife the sum of One Thousand ($1,000.00) Dollars a week in the form of cash or check;
c) The Husband shall create an escrow account with the sum of Three Thousand ($3,000.00) Dollars to pay the Wife’s travel expenses ...;
d) The Husband shall pay up to the sum of One Thousand ($1,000,00) Dollars a week directly to the Wife’s domestic help ...;
2. The parties have agreed that the Wife shall have the exclusive use and occupancy of the Indian Creek Village residence until further order of the Court.
3. The Husband shall continue to maintain the fixed bills in connection with the Indian Creek Village residence....
4. As and for the Wife’s temporary attorney’s fees, suit monies, and costs the *835 parties have agreed that the Husband shall pay the sum of One Hundred Fifty Thousand ($150,000.00) Dollars. The aforementioned sum shall be paid, in full, to the Law Firm of Boies, Schiller & Flexner LLP, on or before July 29, 2010.
5. Commencing on August 1, 2010, and for every month thereafter so long as this matter is pending, the Wife shall submit her legal and accounting bills for payment to the Husband’s counsel for payment by the Husband. In the event that any of Wife’s legal and accounting bills are questioned by the Husband or remain unpaid in full within ten (10) days from receipt of the same, the parties have agreed that Justice Gerald Kogan shall be appointed as Special Magistrate with the power to decide the appropriateness of said bills. The Husband shall bear all fees and expenses charged by Justice Kogan in this matter, without prejudice.
(Emphasis added). The temporary support delineated in paragraph 1 specified no termination date; the exclusive use provisions delineated in paragraph 2 were to remain in effect “until further order of the court”; and the fee provisions delineated in paragraphs 4 and 5 were to remain in effect “so long as [the] matter is pending.”
The second agreement (or stipulation) between the parties was executed on June 23, 2011, and modified only paragraph 5 of the earlier stipulation and order regarding attorney’s fees. That agreement obligated Mr. Schecter to pay only 85% of Mrs. Schecter’s attorney’s fees upon being invoiced for same with the necessity and reasonableness of the remaining 15% to be determined after entry of a final judgment by either agreement of the parties or determination by a special master. This agreement also stated that it was “without prejudice for the Court to make an ultimate determination as to the Wife’s entitlement to attorney’s fees and costs and the reasonableness and amount of said fees and costs.”
A little less than a week later, the parties’ marriage was dissolved in a bifurcated proceeding with the court below retaining jurisdiction to determine whether the parties’ prenuptial agreement was valid and binding. That same month, the court below “adopted, ratified and approved in all respects” the parties’ agreement to modify paragraph 5 of their earlier agreement to clarify Mr. Schecter’s continuing obligation to pay Ms. Schecter’s attorney’s fees.
On April 10, 2012, following a three week trial, the court below orally announced that it had determined that the parties’ prenuptial agreement was valid and enforceable. The court advised, however, that it would take “several months” before a written judgment would be entered. No determination was made as to Mrs. Schecter’s entitlement to attorney’s fees or the reasonableness of any previously awarded fees. A little less than three weeks later, Mr. Schecter filed a “Motion to Terminate Temporary Support, Temporary Attorney’s Fees and Costs, for the Immediate Return of Automobile, and for Other Relief’ claiming that continued compliance with the parties’ prior agreements (and agreed orders thereon) would “give the Former Wife an undeserved windfall” because the amount of alimony that she was to receive pursuant to the prenuptial agreement was substantially less than sums already paid in temporary support and fees.[1] In response, the trial court terminated both Mr. Schecter’s temporary support and attorney’s fees obligations.
*836 We start with two established principles. One, “proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law.” Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997). Two, there is a long-held difference in the controlling effect of pre- and post-dissolution contractual obligations. This distinction was outlined in Belcher v. Belcher, 271 So.2d 7, 9 (Fla.1972), which pronounced that “[f]or temporary support, suit money and temporary attorney’s fees, the State remains an interested party and cannot be excluded by contract during this period of continuance of the legal relationship of husband and wife.” This obligation recognizes the State’s interest in preventing spouses from becoming dependent upon the welfare of others and is so significant that it precludes the parties to a marriage from contracting away or waiving temporary support and attorney’s fees before a final judgment is entered. Id. at 9-10. See Lashkajani v. Lashkajani, 911 So.2d 1154, 1157 (Fla.2005) (reconfirming the obligation of spousal pre-judgment support recognized in Belcher.)[2],[3]
Addressing the trial court’s decision on each of the obligations at issue in this case, we affirm the trial court’s decision to terminate Mr. Schecter’s temporary support obligation. Section 61.14(ll)(a), of the Florida Statutes provides that “[a] court may, upon good cause shown, and without a showing of a substantial change of circumstances, modify, vacate, or set aside a temporary support order before or upon entering a final order in a proceeding.”
Duss v. Duss, 92 Fla. 1081, 111 So. 382, 383-84 (1926), likewise confirmed a trial court’s authority to terminate a temporary support obligation:
Alimony does not arise from a business relation, but from the relation of marriage. It is not founded upon contract, express or implied, but on the natural legal duty of the husband to support his wife and children. The existing general obligation of the husband to support is made specific by judicial decree of the court of appropriate jurisdiction. Audubon v. Shufeldt, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009. The power of the court to enter the decree in the first instance is not dependant upon the agreement of the parties. Neither is the court in any sense bound by the agreement of the parties, but may adopt or reject it as seems consistent and proper to the court. For the same reason the agreement cannot preclude the court in the proper exercise of its jurisdiction and power, which exists entirely independent of the agreement, from modifying or vacating its own in *837 terlocutory order as may be justified by subsequent 'developments during the pendency of the cause.
(Emphasis added); accord Craig v. Craig, 157 Fla. 710, 26 So.2d 881, 883 (1946); see 26 Fla. Jur. 2d Family Law § 1093 (2012) (“An order granting temporary alimony or support is an interim or interlocutory order, and, in the absence of intervening appellate jurisdiction, it remains within the control of the court until the final judgment is entered. Until then, the court may modify or set aside the order, even though it was entered by consent of the parties and pursuant to an agreement between them.” (footnotes omitted) (emphasis added)).
Below, Mr. Schecter argued that over a twenty-one month period he had paid Mrs. Schecter temporary support, including the expenses for exclusive use of the matrimonial home, of approximately $2.5 million excluding the amounts he paid for Mrs. Schecter’s attorney’s fees. He argued these amounts were greatly in excess of the amounts he was required to pay under the Pre-nuptial Agreement, which the court by then had found to be valid and controlling. Mr. Schecter argued the evidence showed Mrs. Schecter had substantial means of her own, with a net worth that “may be as high as $2 million.”[4] Mrs. Schecter did not dispute the facts contained in her former husband’s motion, but argued only the temporary support should not be terminated until the final judgment was entered.
On the facts presented, we cannot conclude the trial court abused its discretion in terminating Mr. Schecter’s temporary support obligation. Having paid over ten times the amount previously agreed to and with no claim by Mrs. Schecter of insufficient funds for her own support, good cause arguably was demonstrated for termination of Mr. Schecter’s temporary support obligation. Thus, we cannot characterize the trial court’s decision as arbitrary, fanciful, or unreasonable. See Vargas v. Deutsche Bank Nat’l Trust Co., 104 So.3d 1156 (Fla. 3d DCA 2012) (citing Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980), confirming that “discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, in other words where no reasonable person would take the view adopted by the trial court”).
We cannot, however, approve of the trial court’s decision to terminate Mr. Schecter’s temporary attorney’s fees obligation. Any determination regarding an award of attorney’s fees in a dissolution proceeding “begins with section 61.16 [of the Florida Statutes]”, Rosen, 696 So.2d at 699, which provides that a “court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney’s fees, suit money, and the cost to the other party of maintaining or defending any proceeding under [chapter 61]”. § 61.16, Fla. Stat. (2012).
Because the purpose of this statute is to “ensure that both parties will have a similar ability to obtain competent legal counsel,” and “assure that one party is not limited in the type of representation he or she would receive because that party’s financial position is so inferior to that of the other party,” it neither is “necessary that one spouse be completely unable to pay attorney’s fees for the trial court to require the other spouse to pay those fees,” nor should one spouse be required to diminish his or her share of a distribution, to receive a temporary fee award. Rosen, 696 So.2d at 699 (quoting, in part, Stan *838 dard, Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 835 (Fla.1990)); Canakaris, 382 So.2d at 1197; Cullen v. Cullen, 884 So.2d 304, 306 (Fla. 2d DCA 2004) (“It is not necessary that one spouse be completely unable to pay attorneys’ fees for the circuit court to require the other spouse to pay them. The purpose of an attorneys’ fee award under section 61.16, Florida Statutes ... is to ensure that both parties will have a similar ability to obtain competent legal counsel.”) (citation omitted); Giovanelli v. Giovanelli, 654 So.2d 154, 155 (Fla. 4th DCA 1995) (“The principle criterion for an award of attorney’s fees in a marital case is the relative financial resources of the parties. Moreover, it has been pronounced that the award of attorney’s fees is proper to avoid an inequitable diminution of the fiscal sums granted ... in those proceedings.”) (citations omitted); Askegard v. Askegard, 584 So.2d 47, 49 (Fla. 1st DCA 1991) (“To avoid an inequitable diminution of funds, the trial court was free to award attorney’s fees.”).[5]
In this case, the parties made no attempt to contract away or to waive the entitlement to temporary support, including temporary attorney’s fees, pending entry of a final judgment. Indeed, the parties entered into not 'one but two agreements providing for Mrs. Schecter to receive temporary attorney’s fees, the first for “every month ... so long as this matter is pending,” (emphasis added), the second addressed a 15% hold back. The parties agreed that 15% of the fees that she was to incur would be reviewed after judgment was entered to determine if those fees were reasonable and that the court below would ultimately determine the total amount for fees and costs to which she would be entitled. There is no dispute that this matter still is pending and no dispute that an “ultimate” reckoning as to the amount to which Mrs. Schecter is entitled for her fees and costs has yet to be determined.
Also, while an agreement concerning the payment of temporary attorney’s fees need not be deemed controlling, it also should not be ignored. See Vick v. Vick, 675 So.2d 714, 718 (Fla. 5th DCA 1996) (“Since the determination of fees and costs related to a matter which the parties properly could stipulate, the trial court was bound by the pretrial stipulation.”); *839 Menendez v. Menendez, 435 So.2d 287, 289 (Fla. 5th DCA 1983) (“[T]he former husband contends the award of attorney’s fees to his former wife is erroneous because the lower court made the award without expert testimony regarding the fees. He has waived this objection by having stipulated below to the court determining the award without the necessity of expert testimony.”). Here, the parties made a deal — that Mr. Schecter would pay Mrs. Schecter’s temporary attorney’s fees “so long as [the] matter is pending.” As this appeal confirms, this matter still is “pending” and Mr. Schecter’s belief that his promises allow a “windfall,” failed to provide a sufficient basis for terminating that obligation.
In short, legally and equitably, Mrs. Schecter is entitled to receive temporary attorney’s fees and costs, unless, that is, Mr. Schecter can demonstrate that consideration of the financial resources of both parties or some other equitable imperative mandates termination of those payments. To date, Mr. Schecter has made no such showing.[6] Thus, we conclude the trial court abused its discretion in deciding to terminate this obligation.
The order on appeal therefore is affirmed as to the termination of the temporary alimony obligation but reversed as to the termination of the obligation to pay Mrs. Schecter’s temporary attorney’s fees in accordance with the parties’ prior agreements.
Affirmed in part, reversed in part.

. According to the former husband, he already had paid the former wife some $2.5 million in temporary support and over $150,000 for her attorney’s fees.

. Lashkajani recognized that although Belcher speaks of a husband’s duty of support, that duty has now been extended by law to both spouses. Lashkajani, 911 So.2d at 1157, n. 2 (citing ch. 71-241, ch. 95-147, Laws of Fla., and section 61.09 of the Florida Statutes).

. In Lashkajani, the court did carve out something of a caveat to this longstanding analysis concluding that "prenuptial agreement provisions awarding attorney's fees and costs to the prevailing party in litigation regarding the validity and enforceability of a prenuptial agreement are enforceable.” It did so observing:
Prevailing party clauses in prenuptial agreements can be distinguished from provisions regarding pre-dissolution support. Provisions waiving the right to temporary alimony or attorney's fees and costs incurred in the dissolution proceedings are included to enrich the parties entering the agreement. In contrast, prevailing party clauses protect the agreement itself. Their purpose is to indemnify the party who relied on the agreement and constitute a disincentive to one who may frivolously challenge it.
Id. at 1159.

. This included a half interest in a waterfront home on Miami Beach owned with her mother, where Mrs. Schecter's interest was valued at $950,000. •

. See Cobo v. Sierralta, 13 So.3d 493, 500-01 (Fla. 3d DCA 2009) ("[T]he failure to award such fees to [Ms. Cobo], and certainly the failure to enforce the only limited award made, deprived Cobo of any meaningful representation ... See Robbie v. Robbie, 591 So.2d 1006, 1009 (Fla. 4th DCA 1991) (confirming that the purpose of a fee award in dissolution actions 'is to ensure that both parties ... have similar access to counsel and can thus fight the action on a nearly equal footing’); see also Rosen v. Rosen, 696 So.2d 697, 699 (Fla. 1997) (reiterating the standard announced in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), that the purpose of a fee award in dissolution action is to ensure that both parties have ‘a similar ability to obtain competent legal counsel’); Young v. Young, 898 So.2d 1076, 1077 (Fla. 3d DCA 2005) (confirming that the purpose of a fee award in dissolution actions is to ‘ensure that both parties to a dissolution case have similar access to counsel and that neither has an unfair ability to obtain legal assistance because of the other's financial advantage’ ”) (emphasis added).); see also Lashkajani, 911 So.2d at 1156-57 (reconfirming a spouse’s obligation as “including the responsibility for attorney's fees and costs,” which cannot be contracted away); Blanton v. Blanton, 654 So.2d 1240, 1240 (Fla. 2d DCA 1995) (stating that the "obligation to provide spousal support during the term of a marriage includes responsibility for the payment of attorney’s fees and costs” ... [and this obligation] cannot be waived or contracted away”); Veiga v. Veiga, 563 So.2d 1089, 1090 (Fla. 5th DCA 1990) (finding that "spousal support obligation during coverture includes liability ... for ... prejudgment attorney's fees and cannot be contracted away”).

. In Kelly v. Kelly, 925 So.2d 364 (Fla. 5th DCA 2006), our sister court found that the court below abused its discretion in failing to award attorney’s fees to a former wife even though the former wife had secured a $1.8 million distribution. The court concluded that "one party need not be completely without ability to pay attorney fees in order to be awarded fees.” Id. at 368. Thus, in significant part, because the former husband’s assets and income exceeded the former wife’s by a factor of 8 — he left the marriage with a net worth exceeding $12,000,000 while the former wife left with only the proceeds from the $1.8 million marital home — denial of a fee award to the former wife was reversed.
Here, as in Kelly, the wife with a net worth of approximately $2 million has some ability to pay. However, Mr. Schecter’s net worth is almost $180 million, ninety times that of Mrs. Schecter. Moreover, a significant part of Mrs. Schecter’s net worth is tied up in a home owned with her mother. On these facts, and in light of the parties’ agreements, we conclude that here, as in Kelly, the order terminating the temporary fees obligation should be reversed.