DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHAD GODWIN,**
Appellant,

v.

**STEPHANIE GODWIN** n/k/a **STEPHANIE ANN FESTA,**
Appellee.

No. 4D18-2228

[May 15, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kathleen J. Kroll, Judge; L.T. Case No. 50-2012-DR-012483-XXXX-NB.

Christen C. Ritchey of Johnson & Ritchey, P.A., Boca Raton, for appellant.

Jennifer Labbe of Trial Lawyers Group, Wellington, for appellee.

CONNER, J.

In this case, Chad Godwin ("the Former Husband") and Stephanie Godwin n/k/a Stephanie Ann Festa ("the Former Wife"), filed competing motions for contempt, each alleging the other violated provisions of the final judgment regarding shared parental responsibility for their minor children. The trial court granted each party's motion in part, adjudicating both parties in contempt of court.

The Former Husband appeals the order adjudicating him in contempt, asserting two grounds for reversal. The Former Husband argues the trial court erred by: (1) finding him in contempt where the parties' marital settlement agreement and the final judgment did not contain language which clearly prohibited the alleged contemptuous conduct; and (2) improperly granting a modification of the parties' marital settlement agreement and the final judgment without the Former Wife filing a proper petition for modification. Additionally, the Former Husband appeals the order denying his request for attorney's fees and costs, after the trial court found the Former Wife in contempt. We agree with the Former Husband's

arguments, and explain our analysis for reversing the trial court's rulings and remanding for further proceedings.

*Background*

The marriage between the parties was dissolved in 2013. A marital settlement agreement ("MSA") was incorporated into the final judgment, including provisions for timesharing of the parties' two minor children. The parties subsequently executed multiple stipulations modifying their MSA. Among these were the parties' Second and Fourth Stipulations, which were adopted by corresponding orders modifying the original final judgment.

The Second Stipulation clarified that all communications between the parties must only concern issues related to the children, and for non-emergency matters, must only take place through the OurFamilyWizard.com website, and must be professional, factual, and non-confrontational.

The Fourth Stipulation modified the provisions of the original MSA concerning shared parental responsibility and decision-making authority. Subsection (a) of the stipulation provided that the parties would have shared parental responsibility and that they would confer and attempt to agree on major decisions involving the children, but that if they were unable to agree, the Former Husband would have the decision-making authority with respect to the children's education, medical, and extra-curricular activities. Subsection (b) of the stipulation emphasized that regardless of decision-making authority, the Former Wife would continue to be informed of medical appointments, school functions, and extra-curricular activities and to be entitled to attend. Subsection (b) further stated:

> The parent with whom the children are enjoying timesharing, or that *parent's designee*, shall be responsible *to transport* the children to their activities or *appointments*. In the event the parent, or that *parent's designee*, enjoying timesharing is not able to transport the children to the [sic] their activities or *appointments*, the other parent (or his/her *designee*) shall be permitted *to transport* the children.

(emphases added).

Additionally, the MSA and modifying stipulations contain provisions regarding the award of attorney's fees and costs. The parties' original MSA provided:

2

In the event of any litigation between the parties to enforce the terms of this agreement, the non-defaulting party shall be entitled as a matter of right to an award of attorneys' fees and costs associated with such litigation from the defaulting party.

More specifically, the parties' Second Stipulation contained the following:

All terms, provisions, obligations and conditions of this agreement are enforceable through the contempt powers of this court. More specifically, all monetary contribution/reimbursement provisions and any obligations to consent, cooperate and/or execute and provide documents are enforceable by the full contempt powers of this court. In an effort to minimize and reduce future non-compliance and potential future litigation, the parties specifically acknowledge, agree and stipulate that *if either party is required to file a court action to enforce* the provisions of this agreement/stipulation or to compel the other party to comply with any of the terms, obligations and conditions of this stipulation *that party shall be entitled to 100% of their attorney fees and costs incurred in such action, regardless of need or ability to pay.* Additionally, *if either party is able to provide proof/evidence that the other party has failed to comply with this agreement or that the other party has violated this agreement* (i.e. *unauthorized communication, improper communication,* failure to execute documents or cooperate as required, etc.) *then* **the party who has violated the agreement shall pay 100% of the attorney fees incurred in establishing such violation**. In any such case/matter/issue the court shall determine and decide, and include such finding in any order/report, which party has violated any particular term of this agreement and *shall specifically order that party to pay the other parties* [sic] *attorney* [sic] *fees/costs associated with such action/matter/issue(s).*

(emphases and bold emphasis added). Likewise, the Fourth Stipulation provided:

In the event of any litigation between the parties to enforce the terms of their written agreements adopted as Orders of this Court, including this Stipulation, the prevailing party shall be entitled to an award of attorney fees and costs.

3

The Former Husband filed a motion for civil contempt and enforcement against the Former Wife, alleging the Former Wife violated the terms of subsection (b) of the Fourth Stipulation by refusing to transport the children to their dance and football activities during her timesharing, and failing to allow the Former Husband to transport them, causing the children to repeatedly miss these activities. The Former Husband requested attorney's fees in connection with bringing the motion. Thereafter, the Former Husband filed a second motion for contempt and enforcement, in which he alleged that the Former Wife violated the Second Stipulation by communicating through OurFamilyWizard.com about issues not specific to the children. The Former Husband again requested attorney's fees.

Subsequently, the Former Wife filed her own motion for contempt, alleging that the Former Husband repeatedly violated subsection (a) of the Fourth Stipulation by failing to confer and consult with her on various decisions involving the children's schooling, extra-curricular, and medical issues and appointments. The motion also complained of an incident in which the Former Husband brought his girlfriend to their daughter's doctor's appointment that resulted in an altercation between the Former Wife and the girlfriend at the doctor's office, whereby both were asked to leave. The Former Wife argued the Former Husband routinely appoints his girlfriend "as a pseudo medical care proxy to appear at [doctor's] appointments and intrude in medical decision making for the minor children[.]" The Former Wife argued this was a violation of HIPAA[1] and her right of privacy. In addition to seeking contempt sanctions for violation of subsection (a) of the Fourth Stipulation, the Former Wife requested the trial court's "equitable intervention" in enforcing the provisions of subsections (a) and (b) by "striking the provision [of subsection (b)] regarding appointing designees as it is in direct violation of the Florida Constitutional Right to Privacy." The Former Wife also requested attorney's fees.

The parties' competing motions for contempt and enforcement were heard at the same time. At the hearing, with regards to the Former Wife's request to strike the provision in the Fourth Stipulation with reference to the appointment of a designee, the trial court reasoned:

> Significant other, I do not interpret this that she can do or he can do anything but transport. That is period. And I have no problem with anybody that's safe for the kids. You both work,

---

[1] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996).

so okay, that's going to happen.  Transport means that you sit in the -- you transport, you take the kid to the event.

 . . . .

So that's it.  Transport is it.  Can't be in the room with the kids, doctors or can't be in parent/teacher conference, can't hold the parent/teacher conference without one of the parents being there.  My views are different once you marry somebody, but significant other, that's what that is, to transport.

Thereafter, the trial court entered its order granting in part and denying in part both parties' motions.  The trial court granted the Former Husband's motion in part, finding the Former Wife in contempt because her OurFamilyWizard.com emails violated the provisions of the Second Stipulation.  As for the Former Wife's motion, the trial court found the Former Husband in contempt "for having his significant other in attendance at the parties' daughter's . . . doctor's appointment and acting beyond transport."  However, the trial court denied the Former Wife's request to strike the provision of the Fourth Stipulation regarding designees.  Instead, the trial court ordered that the provision is

clarified to mean that transport is the sole function of a party's significant other.  A significant other may transport the children to doctor's appointments but cannot be in the room with the children or attend parent teacher conferences.

The trial court denied both parties' requests for attorney's fees.

The Former Husband moved for a rehearing, asserting, in part, that he was erroneously held in contempt for an action not prohibited by any court order or stipulation of the parties. He also argued the court's "clarification" of the relevant portion of the Fourth Stipulation was effectively a modification of the MSA and final judgment, for which no petition for modification had been filed.  The Former Husband further argued he was entitled to attorney's fees.  The trial court denied the motion for rehearing.  The Former Husband gave notice of appeal.

*Appellate Analysis*

The Former Husband appeals the finding and adjudication of contempt against him, as well as the denial of an award of attorney's fees and costs in his favor because the trial court found the Former Wife in contempt for violating the MSA and final judgment.  We explain our determinations and reasoning.

5

*Adjudication of Contempt Against Former Husband*

On appeal, the Former Husband argues that the trial court erred because it held him in contempt for actions that did not violate the terms of the parties' final judgment or any subsequent order modifying the initial final judgment. The Former Husband also argues that in order to find him in contempt, the trial court, in essence, rewrote the provision in the Fourth Stipulation regarding designees, which was error because the revision granted relief to the Former Wife that she did not request. The Former Husband's arguments raise issues of legal error.

> A judgment of contempt comes to the appellate court clothed with a presumption of correctness and will not be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error.

*Harris v. Hampton*, 70 So. 3d 747, 748 (Fla. 4th DCA 2011) (quoting *DeMello v. Buckman*, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005)). "However, . . . '[a] judge cannot base contempt upon noncompliance with something an order does not say.'" *Id.* at 748-49 (alteration in original) (quoting *DeMello*, 914 So. 2d at 1093). "Under such circumstances, the standard of review is legal error, not abuse of discretion." *Id.* (quoting *DeMello*, 914 So. 2d at 1093).

"For a person to be held in contempt of a court order, the language of the order must be clear and precise, *and* the behavior of the person must clearly violate the order." *Reder v. Miller*, 102 So. 3d 742, 743 (Fla. 2d DCA 2012) (quoting *Paul v. Johnson*, 604 So. 2d 883, 884 (Fla. 5th DCA 1992)). Additionally, we have held that:

> [W]hen a final judgment or order is not sufficiently explicit or precise to put the party on notice of what the party may or may not do, it cannot support a conclusion that the party willfully or wantonly violated that order. Even though a judgment of contempt is clothed with a presumption of correctness, "[o]ne may not be held in contempt of court for violation of an order or a provision of a judgment which is not clear and definite so as to make the party aware of its command and direction." *Lawrence v. Lawrence*, 384 So. 2d 279[, 280] (Fla. 4th DCA 1980) (second alteration in original) (citation omitted).

6

*Keitel v. Keitel*, 716 So. 2d 842, 844 (Fla. 4th DCA 1998). Furthermore, "implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt." *Id.*

We have previously reversed orders of contempt where the underlying order failed to specifically preclude the actions challenged. *See, e.g., Wilcoxon v. Moller*, 132 So. 3d 281, 287 (Fla. 4th DCA 2014) (finding that the trial court committed reversible error by entering order finding ex-wife in contempt of order providing, that her "current husband shall not be present anywhere that" ex-husband was, in part because the prior order was not specific enough, as to what ex-wife's duties were in the event that current husband refused to stay away from ex-husband, to support any judgment of contempt); *Harris v. Hampton*, 70 So. 3d 747, 749 (Fla. 4th DCA 2011) (holding that, while directing mother to enroll the child may imply that she is responsible for paying tuition, "implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt" (quoting *Keitel*, 716 So. 2d at 844 (reversing the trial court's order finding former wife in contempt and reasoning that her relocation out of state with children, implicitly obstructing former husband's visitation rights, could not serve as basis for order of civil contempt, where final judgment of dissolution did not contain express provision prohibiting relocation))).

In this case, the trial court found the Former Husband to be in contempt "for having his significant other in attendance at the parties' daughter's . . . doctor's appointment and acting beyond transport." However, the Former Husband correctly points out that nowhere in the final judgment or the orders adopting the parties' subsequent stipulations was the Former Husband precluded from allowing his significant other to attend medical appointments. Additionally, the language of subsection (b) of the Fourth Stipulation does not state that the significant other's participation is limited to transport. Nor does it state that the Former Husband must prevent his significant other from attending or ensuring her contact with the children is limited to transporting them to their appointments. Thus, the Former Husband is correct that the trial court erred in holding him in contempt for having his significant other at his daughter's doctor's appointment and acting beyond transport. Furthermore, to the extent the trial court based its finding of contempt upon the implication that the significant other's activities were so limited, such would also have been erroneous, where, as discussed above, implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt.

Additionally, the Former Husband contends the trial court also erred by awarding the Former Wife relief she did not request in her motion and by improperly rewriting the terms of the parties' Fourth Stipulation. It is well settled that "courts are not authorized to award relief not requested in the pleadings. To grant unrequested relief is an abuse of discretion and reversible error." *Worthington v. Worthington*, 123 So. 3d 1189, 1190 (Fla. 2d DCA 2013) (quoting *Abbott v. Abbott*, 98 So. 3d 616, 617-18 (Fla. 2d DCA 2012)). The caselaw also makes clear that in family cases, provisions of final judgments pertaining to timesharing generally cannot be modified unless a party files a petition seeking modification or a party files a written stipulation by the parties asking the court for the modification. *See id.* Moreover, it cannot be said, based on the record in this case, that the issue was tried by consent. Thus, we agree with the Former Husband that the trial court erred by granting relief without filing and serving a proper petition for modification.

*Denial of Award of Attorney's Fees and Costs to Former Husband*

The Former Husband argues that the trial court erred in denying his request for attorney's fees and costs incurred in enforcing the MSA, after finding the Former Wife in contempt and in violation of a provision of the MSA. To the extent Former Husband's appeal involves interpretation of the MSA, our review, as with any contract, is *de novo*. *Conway v. Conway*, 111 So. 3d 925, 927 (Fla. 1st DCA 2013).

As discussed above, the parties' MSA, as modified by stipulations, contained provisions regarding the award of attorney's fees and costs for enforcement. Specifically, the Second Stipulation contains a clear and unambiguous provision for attorney's fees to the party who establishes a violation of the agreement:

> If either party is required to file a court action to enforce the provisions of this agreement/stipulation or to compel the other party to comply with any of the terms, obligations and conditions of this stipulation *that party shall be entitled to 100% of their attorney fees and costs incurred in such action, regardless of need or ability to pay. Additionally, if either party is able to provide proof/evidence that the other party has failed to comply with this agreement or that the other party has violated this agreement* (i.e. unauthorized communication, improper communication, failure to execute documents or cooperate as required, etc.) *then the party who has violated the agreement shall pay 100% of the attorney fees incurred in establishing such violation.* In any such case/matter/issue

the court shall determine and decide, and include such finding in any order/report, which party has violated any particular term of this agreement and shall specifically order that party to pay the other parties [sic] attorney [sic] fees/costs associated with such action/matter/issue(s).

(emphases added). Notably, the Second Stipulation is arguably more specific and detailed than the two other provisions of the MSA and Fourth Stipulation relating to attorney's fees and costs for enforcement, which state in general terms that the prevailing party is entitled to fees and costs. In the instant case, the trial court found the Former Wife in contempt of the provision in the Second Stipulation regarding communication between the parties because her OurFamilyWizard.com emails violated the terms therein. However, the trial court nevertheless denied the Former Husband's request for attorney's fees.

"[I]t is well settled that in a dissolution of marriage proceeding, the parties are free to agree to obligations the trial court could not order in the absence of an agreement." *Taylor v. Lutz*, 134 So. 3d 1146, 1148 (Fla. 1st DCA 2014). "Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Lashkajani v. Lashkajani*, 911 So. 2d 1154, 1158 (Fla. 2005). Notably, "[t]rial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith." *Id.* "Where an agreement's terms are unambiguous, a court must treat the written instrument as evidence of the agreement's meaning and the parties' intention." *Avellone v. Avellone*, 951 So. 2d 80, 83 (Fla. 1st DCA 2007).

Because the plain language of the Second Stipulation clearly and unambiguously provided for an award of attorney's fees to the party required to file a court action to enforce the provisions of the stipulation, we determine the trial court erred in denying the Former Husband's request for attorney's fees. Presumably, the trial court may have denied both parties' requests for fees because it found each to be in contempt of different orders. However, given the above-quoted language coupled with the similar, but more general terms of the MSA and Fourth Stipulation, we reverse the trial court's denial of Former Husband's request for attorney's fees and costs.

*Conclusion*

Having concluded the trial court erred by: (1) adjudicating the Former Husband in contempt for allowing his significant other to attend a doctor's appointment for the minor child; (2) modifying the terms of the Fourth

Stipulation of the MSA and final judgment without the Former Wife filing a proper petition for modification; and (3) denying the Former Husband's motion for attorney's fees and costs incurred to obtain an adjudication that the Former Wife was in contempt for violating the MSA and final judgment, we reverse the provisions of the orders appealed and remand for further proceedings consistent with this opinion.

*Reversed and remanded for further proceedings.*

GROSS and FORST, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***