DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VANESSA L. PRIETO, ESQUIRE,**
Appellant,

v.

**JOANNA ROSSI,**
Appellee.

No. 4D2022-3045

[April 17, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case No. 502020DR004994.

Vanessa L. Prieto of Vanessa L. Prieto Law Offices, L.L.C., Fort Lauderdale, for appellant.

No appearance for appellee.

ARTAU, J.

In this appeal, attorney Vanessa Prieto—who represented Richard Rossi ("Former Husband") in his divorce proceedings with Joanna Rossi ("Former Wife")—challenges the trial court's order holding Prieto in contempt, and ordering her to share equally with the Former Husband in paying Former Wife's attorney's fees and costs as a sanction.

We reverse the trial court's contempt finding against Prieto, and corresponding sanction, because she did not violate any express provision of either the marital settlement agreement ("MSA") reached by the parties during their divorce proceedings, or the agreed final judgment of dissolution of marriage that adopted the MSA.[1]

---

[1] Former Husband initially sought review with Prieto of the trial court's contempt finding against him and corresponding sanction. However, Former Husband voluntarily dismissed his appeal from the challenged contempt finding before briefing. Our reversal of the contempt finding as to Prieto has no impact on the contempt finding and corresponding sanction imposed on Former Husband.

## The MSA's Relevant Terms

The MSA required Former Wife to "execute contemporaneously with th[e] [a]greement," a quit claim deed ("Deed 1") conveying "all of her right, title and interest in the marital residence to Former Husband."

The MSA directed that Deed 1 was to be retained by Former Wife's counsel until the happening of one of two specified events. Specifically, the MSA provided that Former Husband "may, within twelve (12) months, through refinance or satisfaction of the current note and mortgage, cause Former Wife's name to be removed from and off the current note and mortgage encumbering the marital residence." In that event, the MSA authorized Former Wife's counsel to release Deed 1 to Former Husband, or "the closing agent" for any refinance or satisfaction of the current indebtedness on the marital residence.

The MSA also required Former Husband to pay Former Wife a $200,000 lump sum alimony award, with the first $85,000 to be paid to Former Wife upon the MSA's execution, and the balance to be paid in twelve equal monthly installments.

The MSA provided that, if Former Husband defaulted in paying any of the installments due on the alimony balance owed to Former Wife, then a second quit claim deed ("Deed 2"), conveying "all of his right, title and interest in the parties' marital residence" to Former Wife, would be released by Prieto to Former Wife's counsel "for recording" within five days of Prieto being notified of Former Husband's default.

In addition, the MSA provided that, if Former Husband was unable to refinance or otherwise satisfy the existing indebtedness on the marital residence within the twelve-month period set forth in the MSA, then Deed 2 would be released by Prieto to Former Wife's counsel "for recording" within five days of the end of the twelve-month period.

The MSA did not specify or attach any particular form to be used by the parties in preparing either Deed 1 or Deed 2, nor did it expressly require the joinder of the grantee spouse as a signatory of either deed.

Lastly, the MSA included a ten-day provision to provide documents "as may be necessary to enable the other party to effectuate" its terms.

## Former Wife's Contempt Motion

Barely two weeks after the divorce proceedings were final, Former Wife

moved to have both Former Husband and Prieto held in contempt for allegedly violating the MSA by failing to deliver to Former Wife's counsel a fully executed original of Deed 1. Former Wife alleged that originals of both deeds, which the motion asserted "were fully executed" by Former Wife the day before the final divorce hearing, were "delivered" by Former Wife's counsel to Prieto in open court on the day of the hearing. According to the motion, Prieto "represented and promised" that she would "get the Former Husband to execute both original deeds" and return Deed 1 to Former Wife's counsel. Former Wife asserted in her contempt motion that, despite numerous reasonable requests by her counsel, Prieto and Former Husband were holding Deed 1 "hostage" and refused to deliver it.

Former Wife argued in support of her contempt motion that "[t]he clear and obvious terms and intent of the MSA" was for each party's counsel to hold fully executed originals of the deeds conveying the marital residence to their respective clients. Former Wife also argued that the failure to deliver the original of Deed 1 to her counsel was "a willful and flagrant disregard" of the MSA sufficient to support a finding of contempt enforceable by incarceration of both Prieto and Former Husband until compliance with an appropriate purge. Former Wife asserted that an appropriate purge should include Prieto and Former Husband both being directed to immediately deliver the original of not only Deed 1, but also a an original of Deed 2, "fully executed" by Former Husband, to Former Wife's counsel. Former Wife specifically sought an award of her reasonable attorney's fees and costs based on Former Husband's and Prieto's asserted non-compliance with the MSA "with regard to the deeds."

### The Contempt Hearing

At the contempt hearing, Former Wife's counsel acknowledged that he received a fully executed original of Deed 1 sometime in June 2022, which was about four months prior to the hearing. Former Wife's counsel maintained that, because he "finally received it," there was "no contempt as it relates to that matter." Instead, Former Wife announced through her counsel that she therefore sought only her attorney's fees and costs as sanctions for having to secure custody of the original of the executed deed.

As Former Wife's counsel explained, he prepared the deeds to include not only the signature of the grantor spouse, but also the signature of the grantee spouse on each deed. In other words, Former Wife's counsel prepared Deed 1 to require the grantee (Former Husband) to join the grantor (Former Wife) as signatories of the transfer of Former Wife's interest in the marital residence to Former Husband. Likewise, Former Wife's counsel prepared Deed 2 to require the grantee (Former Wife) to join

3

the grantor (Former Husband) as signatories of the transfer of Former Husband's interest in the marital residence to Former Wife.

Prieto testified that she provided copies of fully executed versions of both deeds by electronic mail to Former Wife's counsel. Prieto also made clear that, as soon as she realized she still possessed the original of Deed 1, she immediately sent it to Former Wife's counsel and kept the original of deed 2 pursuant to the MSA.

Former Husband testified that he timely made all alimony payments to Former Wife, without default.

Prieto argued that the MSA's ten-day provision for providing all documents "necessary" to "effectuate" its terms did not apply to her. She also argued that any failure by her to provide fully executed originals of the deeds to Former Wife's counsel within ten days of being requested to do so did not violate the MSA's ten-day provision because that provision applied only to those documents "necessary" to "effectuate" its terms and therefore was inapplicable prior to any default by Former Husband.

## The Trial Court's Contempt Finding

At the conclusion of the contempt hearing, the trial court announced "it [was] clear that the [MSA] provide[d] both in words and spirit a very clear definition of what [was] to take place." The trial court therefore orally ruled that it was granting Former Wife's motion and entering a finding that both Prieto and Former Husband were in contempt of the MSA "relating to the deed issue." The trial court further ruled that Prieto and Former Husband would equally share in paying Former Wife's attorney's fees and costs incurred in litigating the contempt motion "with regard to the deed issue."

Echoing the remarks made in support of its ruling at the conclusion of the hearing, the trial court stated in the written contempt order:

> The deed issue is a big deal. Any litigant, such as the Former Wife, who has lived through contentious litigation and had in the balance a deed to the marital home would be persistent, to say the least, to ensure that [her] rights were protected by [her] attorney's holding the executed deeds that were required to be held and in conformity with law so that should one side or the other default, that deed would be immediately filed with the clerk of the [c]ourt and the transfer of the property would take place immediately.

4

In the order, the trial court found the evidence presented at the hearing established that Former Husband had "signed the subject deed" two days after the final divorce hearing, and that it took from January 2022 to June 2022, until Former Wife's counsel finally "received delivery of the original deed and the protection the Former Wife was entitled to under the MSA for preserving her rights" in the event of the MSA's "potential default." The trial court therefore awarded Former Wife her attorney's fees and costs, to be paid jointly by Prieto and Former Husband, as a sanction for the contempt.

## Appellate Analysis

"A judgment of contempt comes to the appellate court clothed with a presumption of correctness and will not be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error." *DeMello v. Buckman*, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005). However, "[t]o the extent [this] appeal involves interpretation of the MSA, our review, as with any contract, is de novo." *Godwin v. Godwin*, 273 So. 3d 16, 23 (Fla. 4th DCA 2019); *see also Reilly v. Reilly*, 94 So. 3d 693, 696 (Fla. 4th DCA 2012) ("The interpretation of the wording and meaning of [a] marital settlement agreement, as incorporated into [a] final judgment, is subject to de novo review." (quoting *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003))).

"It is well settled that a marital settlement agreement is to be interpreted like any other contract and is construed as a matter of law." *Reilly*, 94 So. 3d at 696 (quoting *Coe v. Abdo*, 790 So. 2d 1276, 1279 (Fla. 4th DCA 2001)). As such, a trial court must enforce the terms of an MSA "when properly called upon to do so," but has "no power to rewrite the[] agreement" when called upon to enforce its terms. *Zolonz v. Zolonz*, 659 So. 2d 451, 453 (Fla. 4th DCA 1995).

As this court observed in *Kovic v. Kovic*, 336 So. 3d 22 (Fla. 4th DCA 2022), "[a] judge cannot base contempt upon noncompliance with something an order does not say." *Id.* at 26 (quoting *Oasis Builders, LLC v. McHugh*, 138 So. 3d 1218, 1220 (Fla. 4th DCA 2014)). In addition, "[w]hen the order that forms the basis for contempt does not 'expressly' require the action" for which the contemnor is held in contempt, "the trial court fundamentally errs when finding that [person] in contempt for failure to do that action." *Id.*; *see also, e.g.*, *Godwin*, 273 So. 3d at 22 ("For a person to be held in contempt of a court order, the language of the order must be clear and precise, and the behavior of the person must clearly violate the order." (quoting *Reder v. Miller*, 102 So. 3d 742, 743 (Fla. 2d

DCA 2012))).

Even if an order or judgment can be construed to mean that the court "inherently" intended for a certain action by the contemnor to take place, "such implied or inherent provisions of an order [or judgment] cannot serve as a basis for an order of contempt." *Kovic*, 336 So. 3d at 26 (internal quotations and alterations in original omitted); *see also, e.g., Lawrence v. Lawrence*, 384 So. 2d 279, 280 (Fla. 4th DCA 1980) ("One may not be held in contempt of court for violation of an order or a provision of a judgment which is not clear and definite so as to make the party aware of its command and direction.").

Here, the MSA imposed upon Prieto, by its express terms, a legal duty to deliver a fully executed original of Deed 2 to Former Wife's counsel only if Former Husband either defaulted on any of the installment payments due toward the payoff of the lump sum alimony award or failed to secure a refinancing or satisfaction of the indebtedness on the marital residence within the twelve-month period provided in the MSA.

When Former Wife's contempt motion was filed barely two weeks after entry of the judgment adopting the MSA, Former Husband was not in default of either of those provisions, nor was he ever found to be in default of either of those provisions.[2] Accordingly, Prieto was not under any legal duty to deliver Deed 2 to Former Wife's counsel prior to any default by Former Husband. Thus, Prieto could not have been held in contempt with respect to Deed 2, which was the only deed inuring to Former Wife's benefit.

While the MSA required delivery of those documents "necessary to enable the other party to effectuate" the MSA, the MSA did not expressly require Former Husband to join in Deed 1's execution. The MSA required only Former Wife to quit claim her interest in the marital residence to Former Husband.

A quitclaim deed conveys only "such interest in land as the grantor had at the time of the making of such a deed." *Blitch v. Sapp*, 194 So. 328, 330 (Fla. 1940); *see also, e.g., Layne v. Layne*, 74 So. 3d 161, 164 (Fla. 1st DCA 2011) ("A quitclaim deed conveys only that interest in a property held by the grantor at the time of the conveyance.").

---

[2] Prieto noted in her brief that, "since this appeal was filed, Former Husband was unable to refinance the home within one year" and she immediately provided the original of Deed 2 to Former Wife's counsel in accordance with the MSA.

Prieto could not be required to deliver to Former Wife's counsel what only Former Wife was under an express legal duty to execute and deliver to her counsel as the grantor of her interest in the marital residence. It was not "necessary" as a matter of law for Prieto to obtain or deliver a quit claim deed with Former Husband's signature on Deed 1 as the grantee of a deed inuring to his benefit, nor was there any express requirement that Deed 1 be executed by Former Husband and delivered to Former Wife's counsel to "effectuate" any of the MSA's terms.

Moreover, Deed 1, executed solely by Former Wife and conveying only her interest in the marital residence to Former Husband, would have sufficed as a conveyance by quit claim deed of "all of her right, title and interest in the marital residence to Former Husband," which is all that the MSA required of Deed 1. Thus, it was only Former Wife that had an express legal duty to execute and deliver Deed 1 to her counsel, who was required to hold it for Former Husband's benefit. Accordingly, Prieto could not have been held in contempt for failing to timely deliver Deed 1 to Former Wife's counsel.

## Conclusion

We therefore reverse the trial court's contempt finding against Prieto, and corresponding sanction, because she did not violate any express provision of either the MSA or the agreed final judgment of dissolution of marriage, and remand this cause to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded with instructions.*

MAY and LEVINE, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

7